Edward I. Rubendall, Appellee, v. Horace Tarbox et al., Appellants.
Evans Plumbing & Heating Company et al., Appellees.

Gen. No. 6,176.

1.  APPEAL AND ERROR, § 910*—*when supplemental record may be certified and filed by clerk.* A supplemental record on appeal may be prepared and certified by the clerk and filed without the suggestion of a diminution of the record and issuance and service, on the clerk, of a certiorari.

2.  APPEAL AND ERROR, § 963*—*what is effect of certified record on appeal.* A record on appeal, duly certified by the clerk of the court below, imports verity, and cannot be contradicted by affidavits.

3.  APPEAL AND ERROR, § 963*—*when affidavit attacking correctness of certified record insufficient.* An affidavit attacking the correctness of a record on appeal in a chancery proceeding, duly certified by the clerk of the court below, which merely shows that in the chancery record, for the day on which the bill was filed and summons thereon issued, no *placita* appears, is insufficient, since a proper *placita* entered for that day in the common-law record, which the reviewing court would have to assume was entered, would supply such omissions.

4.  APPEAL AND ERROR, § 943*—*how omission of clerk to enter placita in chancery record may be supplied.* Since the Circuit Court, when properly convened, is open for the transaction of both common-law and chancery business, the omission of the clerk to en-

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

ter a *placita* in the chancery record, on the day on which a bill was filed and summons thereon issued, may be supplied, on making up a record of the suit on appeal, by using the *placita* entered on that day in the common-law record.

5. APPEAL AND ERROR, § 494*—*when defendant may not object that other defendants were defaulted improperly.* In a proceeding to establish mechanics' liens, a defendant cannot, on appeal, object that other named defendants were defaulted by an order in which they were not named, where such objecting defendants did not object thereto before going to a hearing before the master, nor raise such question in their objections or exceptions to the master's report, nor at any time in the trial court, and where, in the final decree, such defendants were defaulted by name.

6. EQUITY, § 422*—*when master may report all stipulations and agreements made orally by parties upon a reference.* It is a valid practice for a master, upon a reference, to report all stipulations and agreements made orally by the parties appearing before him.

7. APPEAL AND ERROR—*when objection that witness not properly sworn may not be made for first time on appeal.* Objections that witnesses before a master in chancery were not properly sworn will not be considered where made for the first time on appeal from the decree.

8. APPEAL AND ERROR, § 1272*—*when presumed that questions correctly decided in trial court in absence of abstract.* Where the appellant in a proceeding to establish a mechanic's lien fails to abstract the evidence and objections filed to the master's report, no questions of fact are raised, and all such questions must be presumed to have been correctly decided by the court below.

9. MECHANICS' LIENS, § 202*—*when judgment proper in form.* A decree in a proceeding to establish a mechanic's lien that the defendants named do pay certain sums, and in case of default the master is ordered to sell the premises, *held* not a money decree but one in the alternative, and valid.

10. MECHANICS' LIENS, § 212*—*when defendant failing to assert lack of liability in lower court bound as owner.* A defendant in a proceeding to establish a mechanic's lien *held* liable as owner of the premises, though she had never signed the written contract for the construction of the building, entered into by co-owners with her authority, where she did not allege in her answer that she was not bound thereby, and made no objection to the master's report which found her liable, or in any way asserted in the lower court her lack of liability, but had purchased the interest of a co-owner and accepted a deed binding her to pay the unpaid cost of the erection of the building.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

11. MECHANICS' LIENS, § 202*—*when decree not objectionable because ordering building owned by several defendants sold as a whole.* A decree in a proceeding to establish a mechanic's lien on premises consisting of a single building erected upon land, separate portions of which were owned by different defendants, *held* not objectionable because the amount due was not apportioned among the various defendants, inasmuch as an apportionment was impracticable.

12. MECHANICS' LIENS, § 212*—*when failure to apportion amount due against the various owners may not be raised on appeal.* The question of the apportionment of the amount due among the several owners of a building, in proceedings to establish a mechanic's lien upon premises instead of ordering the building sold as a whole for the entire debt, may not be raised on appeal where no such objection was raised in the court below nor claim to that effect made in the answer.

13. EQUITY, § 440*—*when re-reference to master unnecessary.* Where, in a proceeding to establish mechanics' liens, the master allowed the entire claim of a material man for materials furnished, both under his contract with the building contractor and directly to the owners after the contractor's discharge, *held* that the chancellor's action, in deducting from such allowance the amount accruing before the contractor's discharge and adding it to his allowance, was proper without referring the matter again to the master, though the contractor in his bill stated that he was uncertain whether or not he was entitled to such item, inasmuch as it was immaterial to the owners who received payment for such item and the material man had assigned no cross error on such action.

Appeal from the Circuit Court of Stephenson county; the Hon. OSCAR E. HEARD, Judge, presiding. Heard in this court at the October term. Affirmed. Opinion filed April 14, 1916. Rehearing denied May 24, 1916. *Certiorari* denied by Supreme Court (making opinion final).

CUTHBERT D. POTTS and EDWARD ROBY, for appellants.

LOUIS H. BURRELL and CHARLES H. GREEN, for appellees.

MR. PRESIDING JUSTICE DIBELL delivered the opinion of the court.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

This record begins with a bill of complaint by Edward I. Rubendall against twenty-three defendants for a mechanic's lien on Lots 1 and 10, Block 56, in the original Town of Freeport, Stephenson county, Illinois, and ends with a decree establishing liens upon said property in favor of Rubendall for $3,697.23, with interest thereon at five per cent. per annum from April 4, 1913, and in favor of the Evans Plumbing & Heating Company for $519.74, and interest thereon at five per cent. per annum from July 7, 1913, from which decree those defendants who were owners of said real estate at the entry of said decree, to wit, Horace, Mary, Winifred and Ruth Tarbox, prosecute this appeal. After the record was filed in this court, those who had theretofore been solicitors for said defendants withdrew their appearance and other solicitors who had been strangers to the litigation thereafter conducted the cause in this court. In their original brief herein it was contended that there is no *placita* in the record, and therefore the court never acquired jurisdiction of the cause; that the bill of complaint was never filed and therefore the clerk had no authority to issue a summons and the service of the summons conferred no jurisdiction; that the summons was without seal and was therefore void; that certain amendments, subsequently filed to the bill of complaint, constituted an amended bill and that equity practice required that a new summons should be issued under said amended bill, and as none was issued no jurisdiction was acquired; that the large number of defendants who never answered were never defaulted and therefore the cause was never at issue and could not be referred to the master or go to a final decree; that a supposed order defaulting all defendants who had not entered their appearance was void because no defendants were named; that the cause was never referred to the master; that a supposed order of reference and numerous other orders set out in the record were not orders of

court because not preceded by anything showing a court in session; that various recitals by the master in his report that certain parties stipulated before him to begin the hearing of proofs on a certain date, and to adjourn the hearing of proofs to certain dates, and that a certain witness, if present, would testify to certain specified facts, and that certain other specified facts were admitted, and that the signatures of the witnesses were waived, are all void because the master is without power to state his conclusions that such stipulations were made before him, but that in each case there should have been a written stipulation signed by the parties or their solicitors, and for want thereof the parties are not bound by any such statements in the report; that about one-half of the witnesses before the master are not stated to have been sworn and therefore their evidence must be rejected; that the rest of the witnesses before the master, though stated to have been sworn, are not shown to have been sworn to testify to the truth, but they may have been sworn to perform some official act, and also that the report does not show by whom the oath was administered, and therefore their testimony is void and must be rejected, and there is no evidence in the record; that Mary Tarbox never signed the contract upon which the suit is founded and therefore no mechanic's lien could be entered against her property; that different parts of the land upon which the building in question rests are owned severally by different defendants and that the decree is erroneous because it does not make specific sums liens upon the real estate owned by each, but gives one lien upon all the land; that there is a money decree against the appellants and that such a decree cannot be had in a suit to establish a mechanic's lien, and that no such money decree in any event could be entered against Mary Tarbox because she did not sign the contract.

Thereupon, appellees Rubendall and the Evans

Plumbing & Heating Company, by leave of court, filed a supplemental record, which showed that there should be inserted at the beginning of the record a certain *placita*, set out in said supplemental record, and that certain other *placitas* and convening orders showing the court in session should be inserted at certain specified pages of the original record; and various other matters were specified therein; and the clerk certified that said original record, filed herein, and said additions thereto, constitute a complete record of the cause as appeared from the records and files of his office. It is argued that this court should not have permitted said supplemental record to be filed. Apparently it is meant that the clerk could not of his own motion prepare such a supplemental record, but that a diminution of the record should have been suggested, and a certiorari issued and served upon the clerk and a record filed by him in obedience thereto. In the case entitled *"Anonymous,"* 40 Ill. 53, a transcript of the record had been filed and afterwards an amended transcript was filed, and counsel inquired whether the amended transcript was to be regarded as the record or only a part of the first record, to which the court replied: "The last record sent up we regard as a part of the former record, and as supplying its defects." In *Flagler v. Crow*, 40 Ill. 70, it was held that where there is no objection, plaintiff in error will be permitted to file an additional transcript of the record instead of applying for a certiorari; and in *Rowley v. Hughes,* 40 Ill. 71, it was suggested by counsel that the clerk of the court below had omitted to copy a seal to an acknowledgment appearing in the transcript, and the court held that the clerk below could copy the certificate of acknowledgment and the deed, if necessary, to show its identity, and attach the seal, and certify it accordingly; and counsel then asked if it was necessary that a writ of certiorari should issue to make

the additional transcript a part of the record, and the court said: "No writ of certiorari is necessary; the party interested in making the amendment can file it as an additional or amended record, and it will be considered in connection with the original transcript." In *Goodrich v. Cook*, 81 Ill. 41, it was assigned for error that there was no evidence in the record sustaining a part of the decree. Defendant in error then filed an additional record, setting out the omitted evidence. After passing on certain other objections, not material here, the court held that when the supplemental record was filed it became a part of the record in the case and must be considered as if it had been incorporated in the original record. In *Vahle v. Brackenseik*, 145 Ill. 231, it was insisted in the Appellate Court that the record did not show service upon the appellant. Appellee obtained leave to file an additional record showing service upon appellant. Appellant moved to strike the amended record from the files, and that motion was denied, and that action by the Appellate Court was assigned as error in the Supreme Court because the amended record was permitted to be filed instanter without notice to appellant and without the issue of a certiorari. It was held that the practice adopted by the Appellate Court was proper and consistent with the uniform practice in the Supreme Court, and that when an amended record has been made and properly certified and is ready to be filed, the issuance of a certiorari is unnecessary. We are therefore of the opinion that the objections to this additional record are not well taken. There is an affidavit on file by one of counsel for appellants, which is in conflict in part with said additional record, and it seems to be therefore insisted that said additional record is not true; but we are of opinion that the record duly certified by the clerk of the court below imports verity and cannot be so contradicted. But, if it could be, the showing is insufficient.

Said affidavit shows that the solicitor making it visited the office of the clerk of the court below, since the record was filed here, and examined the chancery record and did not find therein certain *placitas* and certain convening orders certified in this amended record to be part of the record of the court below, and especially a *placita* as of the day when the amended record shows the bill was filed, being the day when the summons was issued and dated. The affiant does not claim to have searched the common-law record on the same day, and if this affidavit were to be considered we would be required to assume that there was in the common-law record a *placita* showing the Circuit Court duly organized and transacting legal business. There are not two separate Circuit Courts, one at law and the other in chancery; and if the court is properly convened it is for the transaction of all kinds of business, unless the statute provides otherwise. If on a particular day the clerk had failed to enter a proper *placita* in the chancery record, we do not doubt that in preparing a record in a chancery cause the clerk could take the *placita* appearing in the common-law record for that day and thus make it appear that the court was duly organized when a certain bill in chancery was filed. Incidentally, it was made to appear that the former solicitor for appellants prepared this record and omitted therefrom the various matters incorporated in the additional record, and that the clerk failed to notice these omissions when he certified to the original record. We are of opinion that the additional record stands unimpeached as a part of the cause now before us.

From the whole record now before us it appears that the record is introduced by a sufficient *placita;* that the bill of complaint was in fact filed on July 29, 1913, on which day the summons was issued; that said summons was authenticated by the proper seal; that the amendment to the bill and the answers were duly filed; that the several orders which appellants in their brief

treat as nullities were in fact entered in this cause in term time; that the final decree was duly entered in term time; and that many other supposed technical errors in the record do not exist. The four appellants and the Evans Company answered. Bessie Shoemaker was defaulted. Afterwards an order was entered, defaulting all defendants who had not entered an appearance. We are of opinion that it was not necessary that each defaulted defendant should be named, but if there were any doubt about that, appellants did not object to going to a hearing before the master because some defendants had not been sufficiently defaulted, nor did they raise any such question in their objections or exceptions to the master's report, nor did they ever raise the question in the court below. Moreover, in the final decree the defendants were again defaulted, the name of each defaulted defendant being expressly stated. We hold that it is a recognized and valid practice, upon a reference to a master, for that officer to report all stipulations and agreements made orally by the parties appearing before him. If the rule were otherwise, still appellants did not object to the master's report on the ground that such agreements and stipulations were incorrectly reported by him, or that he lacked the power to make such a report. Nor do their objections claim that the witnesses were not duly and properly sworn before the master. That point was not raised in the court below. Appellants' discussion of the ''loose leaf'' system of keeping court records, if it were before us, is answered in *People v. Ward,* 272 Ill. 65.

The evidence taken before the master occupies over 1,100 pages of this record. Appellants have not abstracted it. They did not abstract any of the objections which they filed to the master's report. They therefore have not raised upon this record any question of fact, but all questions of fact must be presumed to have been correctly decided by the court below. Ap-

pellee Rubendall has abstracted those objections in order to show that, almost exclusively, they relate only to questions of fact, and that the objections now most insisted upon by appellants were not raised by appellants by objections to the master's report, and therefore in the main they cannot be considered here.

After fixing the amounts due to appellees, Rubendall and the Evans Company, the final decree proceeded as follows: "That the defendants Mary Tarbox, Horace Tarbox, Winifred Tarbox and Ruth Tarbox do pay the said several sums in this decree mentioned within forty days from this date, and in case of default in the payment of said sums or either of them, that then and in that case the master in chancery of this court is ordered to sell said described premises," etc. This is not followed by any provision that said defendants shall be liable for any deficiency if the sale of the premises does not produce the amounts named. It is argued that this is a money decree, and that a money decree cannot be lawfully entered in a suit for a mechanic's lien. We hold that this is not a money decree, but is in the alternative, and means only that unless the defendants pay said sums within the time limited, the premises shall be sold. This is held in *Gochenour v. Mowry,* 33 Ill. 331; *Glover v. Benjamin,* 73 Ill. 42; *Kirby v. Runals,* 140 Ill. 289; *Roberts v. Flatt,* 142 Ill. 485; *Bumgartner v. Hall,* 163 Ill. 136; and so we held in *Pierce v. Coryn,* 139 Ill. App. 445. It is also said that a decree is not justified against the interest of Mary Tarbox, one of the appellants, because she did not sign the written contract relied upon in the bill of complaint. The bill shows that she did not sign it, but alleges that it was made with full authority from her and that she knowingly permitted the other appellants to contract for the erection and construction of said building. In her answer she, with the other appellants, admitted that they all entered

into said agreement, and she did not allege in said answer that she was not bound because she did not sign it. She joined in the defense before the master, and made no such objection to the report which found her liable. Before the building was completed she purchased the interest of Bessie Shoemaker in said real estate and accepted a deed from Bessie Shoemaker to Mary Tarbox, which bound the latter to pay the unpaid cost of the erection of said building. She never asserted in the court below any lack of liability on her part for whatever, if anything, was justly due to Rubendall and the Evans Company. We hold that the decree correctly held her bound with the other owners.

Each appellant owned separate interests in a part only of the land upon which this building was erected, except that one of them owned an easement in some of the land belonging to the others, and that several of them owned one piece jointly. It is claimed by appellants that the amount of the lien should have been apportioned among the several pieces, and that for this reason the decree for the sale of the whole for the entire debt is erroneous. The appellants were the heirs of the Tarbox estate and contracted to put one building upon all their holdings. Their answer is very insufficiently abstracted. It admits very many things charged in the bill. It nowhere claims that the lien ought to be apportioned among the several pieces of land. Appellants had caused an architect to prepare plans and specifications under which the building was erected, and these plans and specifications are in the record and are not abstracted. They show that this was a contract to erect a single building of six stories under one roof, with one elevator and one furnace for the entire building, and that the lines of the various division walls within the building do not correspond with the lines of the respective portions owned by the respective parties. They show that it would be impos-

sible, or at least utterly impracticable, to apportion the total cost of the building among these several small pieces of land.  No such question was raised by the objections filed by the appellants to the master's report, and it therefore was not raised in the court below.  Portions of the Mechanics' Liens Act contain provisions applicable to somewhat similar situations.  The decree in this respect appears to be supported by the principles laid down in *Bastrup v. Prendergast,* 179 Ill. 553; *Mantonya v. Reilly,* 184 Ill. 183; *Berndt v. Armknecht,* 50 Ill. App. 467; *Christian v. Illinois Malleable Iron Co.,* 92 Ill. App. 320.  As the parties chose to contract to erect such a building upon lands severally owned by them, we are of opinion that it was not error to place a lien upon the entire tract for the entire amount due, and that otherwise the contractors would be defeated of their just rights.

The bill alleges, and upon this record it must be assumed, that the evidence showed that the owners applied to Rubendall to superintend the erection of this building before the architect had completed the plans and specifications, and that a verbal contract was made between him and them, under which he began work on April 9, 1912, and did considerable work before those plans and specifications were completed, and that on April 25, 1912, he and the owners executed the written contract set out in the bill, and that it was agreed that what he had done before the written contract was executed should be treated as done under that contract.  By that contract he was to procure the building to be erected and purchase the material and superintend the building, and render the owners bills for what he actually expended, and they were to pay him the money therefor within three days after they received each bill and he was to have three per cent. on the total cost for his remuneration, and he was to erect it according to the plans and specifications,

and according to and under the direction and to the entire satisfaction of Horace Tarbox, one of the owners, who was thereby made the agent of the other owners. There were two buildings on different parts of this land before this contract was made, and the new building was to include and enlarge and repair the old buildings and make them parts of one larger and higher building. Rubendall thereupon made many contracts for labor and material and rendered appellants many bills, part of which they paid. Sometimes Horace Tarbox took the matter out of the hands of Rubendall and made contracts himself and paid subcontractors directly. On April 7, 1913, Horace Tarbox discharged Rubendall and the latter had no further connection with the work. The chief litigated question was one of fact whether Rubendall had properly erected the building. That has been decided against the owners, and, as already seen, is not presented for review here. After the master made his first report the cause was again referred to him on one point, and the Evans Company amended its answer and crossbill in one respect by leave of court so as to indicate that it acted under the direction of Horace Tarbox in doing certain things after Rubendall was discharged on April 7, 1913. The master reported, giving the Evans Company a lien for its entire unpaid bill. Without again referring the cause, the court took from the amount allowed the Evans Company all its unpaid bill accruing before Rubendall was discharged, and added that to the amount the master had allowed Rubendall, after deducting from the allowance to the Evans Company a small sum, to which objection twenty-three by appellants had been sustained. Appellants claim that this should not have been done without a re-reference. We hold a re-reference unnecessary under *Henderson v. Harness,* 184 Ill. 520; *Ennesser v. Hudek,* 169 Ill. 494; and *Wolfe v. Bradberry,* 140 Ill. 578, and other

cases. It is also urged that this change was improper under the pleadings. The bill stated that complainant was uncertain whether he was entitled to recover for the materials furnished by the Evans Company while he had charge of the work, or whether the Evans Company should recover that in its own name. We are required to assume that the evidence justified the action of the court. It does not harm appellants, for it must be immaterial to them whether the sum in question is paid to the Evans Company or to Rubendall for it. The Evans Company has not assigned any cross error on this action and it is bound by this decree. We find no reversible error in the record and the decree is therefore affirmed.

*Affirmed.*